**LAW OFFICES OF BRIAN BARRY**
BRIAN BARRY (135631)
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067
Telephone: (310) 788-0831
Fax: 310-788-0841
Email: bribarry1@yahoo.com

**Liaison Counsel for Adar Investment Fund, Ltd.
and Proposed Liaison Counsel for the Proposed Class**

**BERNSTEIN LIEBHARD LLP**
SANDY A. LIEBHARD
RONALD J. ARANOFF
JOSEPH R. SEIDMAN, JR.
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

**Counsel for Adar Investment Fund, Ltd.
and Proposed Lead Counsel for the Proposed Class**

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCE BONATO, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>YAHOO, INC., CAROL A. BARTZ, and JERRY YANG,<br><br>Defendants. | **CASE NO.: 3:11-CV-2732-CRB**<br><br>**MEMORANDUM IN SUPPORT OF ADAR INVESTMENT FUND, LTD.'S MOTION TO BE APPOINTED AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS CHOICE OF COUNSEL**<br><br>**Hearing Date: September 2, 2011 at 10:00 a.m.** |

30548v1

**PRELIMINARY STATEMENT**

Presently pending before the Court is one securities class action lawsuit (the "Action") brought on behalf of all persons or entities (the "Class") who purchased the common stock of Yahoo, Inc. ("Yahoo" or the "Company") during the period of April 19, 2011 and May 13, 2011, inclusive (the "Class Period"). Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated under Section 10(b), against Defendants Yahoo, Carol A. Bartz, and Jerry Yang.

Class member Adar Investment Fund, Ltd. ("Adar") hereby moves this Court, pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an order: (a) appointing Adar as lead plaintiff in the Action; and (b) approving Adar's choice of Bernstein Liebhard LLP ("Bernstein Liebhard") as lead counsel for the Class.

During the Class Period, Adar suffered losses of approximately $211,493 under the LIFO methodology and $153,659 under the FIFO methodology stemming from its investments in Yahoo. Adar believes that its losses represent the largest financial interest in the outcome of the litigation.

**STATEMENT OF FACTS**

The complaint alleges that during the Class Period, defendants issued materially false and misleading statements regarding the Company's business prospects. Specifically, defendants failed to disclose that an important corporate asset in China had been transferred at much less than market value. As a result of defendants' false statements and omissions, Yahoo's stock traded at artificially inflated prices during the Class Period, reaching a high of $18.65 per share on May 6, 2011.

10947v1

On May 10, 2011, the complaint alleges that Yahoo shareholders learned for the first time that the Company's $1 billion investment in a strategic partnership with Alibaba Group Holdings Limited ("Alibaba"), China's largest e-commerce company, had likely been severely impaired by the misappropriation of Alibaba's most valuable asset, Alipay, an e-commerce payment system, from Alibaba to another private company controlled by Alibaba's Chairman, Jack Ma. On May 15, 2011, Yahoo issued a press release regarding Alipay, stating that Alibaba and its major stockholders Yahoo and Softbank Corporation were "engaged in and committed to productive negotiations to resolve the outstanding issues related to Alipay in a manner that serves the interests of all shareholders as soon as possible." According to news reports, Alibaba received only $46 million for Alipay's assets, which securities analysts valued at $5 billion. On this news, Yahoo's stock fell $0.74 per share to close at $15.81 per share on May 16, 2011 – a decline of 15% from its Class Period high of $18.65 per share.

## ARGUMENT

### I. THE COURT SHOULD APPOINT ADAR AS LEAD PLAINTIFF

#### A. The Procedure Required By The PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." Sections 21D(a)(1) and 21D(a)(3)(B), 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).

First, the plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. Section 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA requires the court to consider within 90 days all motions, filed within 60 days after publication of that notice, made by any person or group of

persons who are members of the proposed class to be appointed lead plaintiff. Sections 21D(a)(3)(A)(i)(II) and 21D(a)(3)(B)(i), 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

    (aa)    has either filed the complaint or made a motion in response to a notice;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Section 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Adar satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, Adar is entitled to the presumption that it is the most adequate lead plaintiff to represent Plaintiffs and, as a result, should be appointed lead plaintiff in the Action.

### 1. Adar Is Willing To Serve As Class Representative

On June 6, 2011, counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A)(i), which announced that a securities class action had been filed against Yahoo, and which advised putative class members

30548v2      3

that they had until August 5, 2011 to file a motion to seek appointment as a lead plaintiff in the action.[1]

Adar has reviewed the complaint filed in the Actions and has timely filed its motion pursuant to the Notice. In doing so, Adar has attached its certification attesting to its willingness to serve as a representative party of the Class and provide testimony at deposition and trial, if necessary. *See* Barry Decl. Ex. B. Accordingly, Adar satisfies the first requirement to serve as lead plaintiff. Section 21D(a)(3)(B)(iii)(I)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

### 2. Adar Is An Institutional Investor With The Largest Financial Interest In The Relief Sought By The Class

Under the PSLRA, any member of the purported class may move for appointment as lead plaintiff within 60 days of the publication of notice that the action has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Subsequently, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The legislative history of the PSLRA demonstrates that it was intended to encourage institutional investors, such as Adar, to serve as lead plaintiff. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff."

\* \* \*

---

[1] *See* Declaration of Brian Barry ("Barry Decl.") Ex. A.

30548v2                                   4

> The Conference Committee believes that . . . in many cases the beneficiaries of pension funds - small investors - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733.

      This Court, as well as others in this Circuit and around the country, have noted a Congressional preference to appoint institutional investors. *See, e.g., Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *6 (N.D. Cal. Nov. 28, 2001) ("It was hoped that including a presumption in favor of the largest stakeholder would give preference to institutional investors which would be in a better position to manage the litigation and to limit the influence of lawyers"); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) ("the PSLRA was enacted to encourage institutional investors to take a more active role in securities litigation"); *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (noting PSLRA's preference for institutional investors); *Ruland v. Infosonics Corp.*, No. 06cv1231(BTM), 2006 WL 3746716, at *3 (S.D. Cal. Oct. 23, 2006) ("cases . . . explain that one of the principal purposes of the PSLRA was to prevent lawyer-driven litigation and to allow for institutional plaintiffs with big financial stakes and expertise in the area to serve as lead plaintiff and control the litigation"); *Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . . "); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor"); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress wanted to encourage large, sophisticated institutional investors

to direct securities class actions, thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful supervision of litigation.").

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996). Furthermore, Congress believed that "increasing the role of institutional investors in class actions [would] ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action." *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999). Congress reasoned that the empowerment of institutional investors would result in the appointment of lead plaintiffs that can best prosecute the claims and are best able to negotiate with and oversee counsel. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation . . ."); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is replete with statements of Congress' desire to put control of such litigation in the hands of large, institutional investors.").

This presumption is rooted in Congress' belief that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts." S. Rep. No. 104-98, at 11 (1995), as reprinted in 1995 U.S.C.C.A.N. 679, 690. In reaching this conclusion, Congress reasoned that:

> Institutions' large stakes give them an incentive to monitor, and institutions have or readily could develop the expertise necessary to assess whether plaintiffs' attorneys are acting as faithful champions for the plaintiff class.

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How Institutional Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995) ("Weiss & Beckerman"). *See also* S. Rep. No. 104-98, at

11 n.32 (noting that Weiss & Beckerman provided "the basis for the 'most adequate plaintiff' provision.").

As an institutional investor, Adar is well-suited to lead the Action. In fact, Adar served as lead plaintiff in the *In re Willbros Group Sec. Litig.*, 05-cv-1778 (S.D. Tex.) action and achieved a $10.5 million settlement on behalf of the class in that case. As an institutional investor with significant resources dedicated to overseeing and supervising the prosecution of the litigation, Adar will be able to actively represent the Class and "drive the litigation" to ensure that the Class obtains the best recovery possible and implement corporate governance changes to correct the environment which allowed this fraud to take place and to prevent a recurrence ever again. *See Gluck*, 976 F. Supp. at 549 (citation omitted).

### 3. Adar Satisfies The Requirements Of Rule 23(a) Of The Federal Rules Of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA also states that at the outset of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to the qualifications of a class representative, Rule 23(a) requires generally that representatives' claims be typical of those of the class, and that representatives will fairly and adequately protect the interests of the class. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *Ferrari v. Gisch*, 225 F.R.D. 599, 606 (C.D. Cal. 2004); *Ruland v. InfoSonics Corp.*, No. 06CV1231, 2006 WL 3746716, at *2 (S.D. Cal. Oct. 23, 2006).

Claims are "typical" under Rule 23 if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Ferrari*, 225 F.R.D. at 606 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Likewise, Rule 23(a) also requires that the person(s) representing the class be able to

"'fairly and adequately protect the interests' of all members in the class." *Ferrari*, 225 F.R.D. at 607 (citation omitted).

The claims asserted by Adar are typical of those of the Class. Adar, like the members of the Class, acquired shares of Yahoo during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, its claims are typical, if not identical, to those of the other members of the Class because Adar suffered losses similar to those of other Class members and its losses result from Defendants' common course of conduct. Accordingly, Adar satisfies the typicality requirement of Rule 23(a)(3).

Adar is also an adequate representative for the Class. There is no antagonism between its interests and those of the Class. Moreover, Adar has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v).

Accordingly, at this stage of the proceedings, Adar has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies Section 21D(a)(3)(B)(iii)(I)(cc), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

## II. ADAR'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval. Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v); Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); Section 21D(a)(3)(B)(iii)(II)(aa), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

30548v2                                8

Adar has selected and retained Bernstein Liebhard as the proposed lead counsel for the Class. Bernstein Liebhard has extensive experience prosecuting complex securities class actions, such as this one, and is well qualified to represent the Class. *See* Barry Decl. Ex. D for the firm resume of Bernstein Liebhard. As a result, the Court may be assured that by approving Bernstein Liebhard as lead counsel, the Class is receiving the best legal representation available.

Bernstein Liebhard has frequently been appointed as lead counsel since the passage of the PSLRA, and has frequently appeared in major actions before this and other courts throughout the country. Indeed, *The National Law Journal* has recognized Bernstein Liebhard for eight consecutive years as one of the top plaintiffs' firms in the country. Of the thirteen firms named to the list in 2007, Bernstein Liebhard is one of only two named six years in a row. Bernstein Liebhard has also been listed in *The Legal 500*, a guide to the best commercial law firms in the United States, for the past four years.

Four of Bernstein Liebhard's recent outstanding successes include:

- *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04-CV-8144 (CM) (S.D.N.Y. 2009) (settlement: $400 million);

- *In re Royal Dutch/Shell Transport Securities Litigation*, No. 04-374 (JAP) (D.N.J. 2008) (Judge Joel A. Pisano gave final approval to a U.S. settlement with a minimum cash value of $130 million. This settlement is in addition to a $350 million European settlement on behalf of a class of non-U.S. purchasers of Shell securities on non-U.S. exchanges, which the court-appointed lead plaintiffs and Bernstein Liebhard were, in the words of Judge Pisano, a "substantial factor" in bringing about);

- *In re Deutsche Telekom AG Securities Litigation*, No. 00-CV-9475 (SHS) (S.D.N.Y. 2005) (settlement: $120 million, representing 188% of the recognized losses); and

- *In re Cigna Corp. Securities Litigation*, No. 2:02CV8088 (E.D. Pa. 2007) (settlement: $93 million).

30548v2                                                    9

1	Further, Bernstein Liebhard partner Stanley Bernstein serves as Chairman of the
2	Executive Committee in *Initial Public Offering Securities Litigation ("IPO")*, No. 21
3	MC 92 (SS) (S.D.N.Y. 2009), pending before Judge Shira Scheindlin in the Southern
4	District of New York. The *IPO* litigation is one of the biggest securities class actions
5	ever prosecuted. On October 5, 2009, the Court granted final approval to a $586
6	million settlement.

7	Similarly, the Law Offices of Brian Barry has repeatedly served as counsel in
8	securities class actions. *See* Barry Declaration Exhibit E.

## CONCLUSION

For the foregoing reasons, Adar respectfully requests that this Court: (1) appoint Adar as lead plaintiff for the Class in the Action and all subsequently-filed, related actions; and (2) approve Bernstein Liebhard as lead counsel, and Law Offices of Brian Barry as liaison counsel, for the Class.

DATED: August 5, 2011  Respectfully submitted,

**LAW OFFICES OF BRIAN BARRY**

/s/
_____
Brian Barry
1801 Avenue of the Stars, Suite 307
Los Angeles, CA 90067
Telephone: (310) 788-0831

**Liaison Counsel for Adar and Proposed Liaison Counsel for the Proposed Class**

**BERNSTEIN LIEBHARD LLP**
Sandy A. Liebhard
Ronald J. Aranoff
Joseph R. Seidman, Jr.
10 E. 40th Street
New York, NY 10016

30548v2

10

Telephone: (212) 779-1414

**Counsel for Adar and Proposed Lead Counsel for the Proposed Class**